729 F.2d 1096
 20 ERC 1842, 14 Envtl. L. Rep. 20,354
 OHIO POWER COMPANY; Cincinnati Gas & Electric Company, et
al., Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Anne M.
Gorsuch, Administrator, Respondents.
The COMMONWEALTH OF PENNSYLVANIA, (80-3813), Petitioner,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Anne M.
Gorsuch, Administrator, Respondents,
Ohio Power Company and Columbus and Southern Ohio Electric
Company, Intervenors.
 Nos. 80-3561, 80-3730, 80-3732, 80-3813, 77-1367 and 76-2090.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 6, 1982.
Decided March 22, 1984.
Rehearing and Rehearing En Banc Denied May 8, 1984.
 
 Roger Strelow, Leva, Hawes, Sumington, Martin & Oppenheimer, Washington, D.C., E. Donald Elliott, Associate Professor of Law Yale Law School, New Haven, Conn., A. Joseph Dowd, American Electric Power Service Corp., Columbus, Ohio, Arthur D. Rheingold, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Ohio Power Co.
 Louis E. Tosi, Fuller & Henry, Toledo, Ohio, for Dayton Power & Light Co.
 James R. Bieke, Shea & Gardner, Washington, D.C., for Peabody Coal Co.
 Douglas R. Blazey, Thomas Y. Au, Harrisburg, Pa., for Commonwealth of Pennsylvania.
 Robert L. Brubaker, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Columbus & Southern Ohio Elec. Co., Ohio Edison & Ohio Power Co.
 Carol E. Dinkins, Paul Kaplow, Land & Natural Resources Division, U.S. Dept. of Justice, Pollution Control Section, Washington, D.C., Barry Neuman, U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Enforcement Section, Washington, D.C., Mary Gade, EPA Region V, Chicago, Ill., Mary Ann Muirhead, Richard Ossias, Air, Noise & Radiation Division, U.S. Environmental Protection Agy., Ronald C. Hausmann, U.S. Dept. of Justice, Land & Natural Resources Div., Pollution Control Section, Washington, D.C., for E.P.A.
 Roger Strelow, Swidler, Berlin & Strelow, Chartered, Washington, D.C., for C & SOE, Ohio Power Co., Dayton Power & Light, Austin Powder Co. & Peabody Coal Co.
 Douglas R. Blazey, Thomas Au, Asst. Counsel, Commonwealth of Pennsylvania, Bureau of Regulatory Counsel, Robert Adler, Harrisburg, Pa., for Com. of Pa.
 Louis E. Tosi, C. Randolph Light, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, Daniel W. Kemp, Cincinnati, Ohio, for petitioners in No. 76-2090.
 John W. Edwards, Lane, Alton & Horst, Columbus, Ohio, amicus curiae for Ohio Mining and Reclamation Ass'n.
 William W. Wehr, Freifield, Bruzzese, Wehr, Morland & England, LPA, Stuebenville, Ohio, amicus curiae for Ohio Coal Operators' Ass'n, Inc.
 William J. Brown, Atty. Gen. of Ohio, Environmental Law Section, Columbus, Ohio, David E. Northrop, Asst. Atty. Gen., for intervenor, State of Ohio.
 James R. Bieke, Shea & Gardner, Washington, D.C., for intervenor Peabody Coal in behalf of Petitioners.
 Before EDWARDS, Circuit Judge, PHILLIPS and PECK, Senior Circuit Judges.
 GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.
 
 
 1
 This appeal concerns the problem of airborne sulphur dioxide emanating from three major power plants located in rural areas in the State of Ohio.[1] The pollution of the ambient air by sulphur dioxide (produced by burning high sulphur coal), is a medically recognized threat to human health. This is particularly true as to infants, the ill and the aged. It also contributes to acid rain with its subsequent deleterious impact on the plant and fish life in the lakes and rivers of Ohio and neighboring states. Indeed it is alleged to contribute to the latter type of pollution in downwind areas as far removed as New England and Eastern Canada.
 
 
 2
 The fundamental issues of this case were dealt with and decided over five years ago in Cleveland Electric Illuminating Co. v. EPA, 572 F.2d 1150 (6th Cir.1978) and Cincinnati Gas & Electric Co. v. EPA, 578 F.2d 660 (6th Cir.1978), cert. denied, 439 U.S. 1114, 99 S.Ct. 1017, 59 L.Ed.2d 72 (1979). In those two opinions, this court approved the EPA's plan for controlling the ambient air affected by four power plants and the Supreme Court denied certiorari. This court's basic rationale for its approval of the EPA's air quality standards was (and remains) concern about human health and safety. In our earlier Cleveland Electric decision, we said:
 
 
 3
 The federal Clean Air Act program which produced these standards is based primarily upon the adverse effect which air pollution has upon human life and health.
 
 
 4
 Acute episodes of high pollution have clearly resulted in mortality and morbidity. Often the effects of high pollutant concentrations in these episodes have been combined with other environmental features such as low temperatures or epidemic diseases (influenza) which may in themselves have serious or fatal consequences. This has sometimes made it difficult to determine to what extent pollution and temperature extremes are responsible for the effects. Nevertheless, there is now no longer any doubt that high levels of pollution sustained for periods of days can kill. Those aged 45 and over with chronic diseases, particularly of the lungs or heart, seem to be predominantly affected. In addition to these acute episodes, pollutants can attain daily levels which have been shown to have serious consequences to city dwellers.
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 There is a large and increasing body of evidence that significant health effects are produced by long-term exposures to air pollutants. Acute respiratory infections in children, chronic respiratory diseases in adults, and decreased levels of ventilatory lung function in both children and adults have been found to be related to concentrations of SO2 and particulates, after apparently sufficient allowance has been made for such confounding variable as smoking and socioeconomic circumstances. Rall, Review of the Health Effects of Sulfur Oxides, 8 Env'tal Health Perspectives 97, 99 (1974).
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Two other facts should be added from the extensive technical record in this case before we turn to the specific legal issues. The first is that sulfur dioxide emitted from plant stacks reacts with other elements in the atmosphere to form sulfuric acid mist and various suspended sulfates which are in fact the irritants which adversely affect human health. T. Lewis, M. Amdur, M. Fritzhand & K. Campbell, Toxicology of Atmospheric Sulfur Dioxide Decay Products 17 (1972).
 
 
 11
 The second important fact is that these derivatives from sulfur dioxide tend to be airborne for days. They affect areas at great distances downwind, even when in the original sulfur dioxide form they were emitted from a high power plant stack.
 
 
 12
 Rall, Review of the Health Effects of Sulfur Oxides, 8 Env'tal Health Perspectives 97, 106 (1974).
 
 
 13
 572 F.2d at 1153, 1155.
 
 
 14
 While three of the original petitioners are parties to this appeal, we are advised that two of the four are now in compliance with the EPA standards which we approved in 1978. As to those two appellants, this appeal is in effect a petition to roll back emission standards which are currently being met, and thus to increase SO2 emissions in the ambient air in Ohio and elsewhere.
 
 
 15
 As indicated above, the plant not in compliance is Ohio Power Company's Muskingum River plant.
 
 
 16
 This court, in its opinion in Cincinnati Gas & Electric Co. v. EPA, supra, approved the EPA plan in all respects except one. The exception pertained to the EPA's employment of the Class A assumption in determining pollution dispersion under least stable wind conditions in rural areas. As to this issue, we remanded saying as follows:
 
 
 17
 On this present record we conclude that United States EPA's employment of the Class A assumption in determining pollution dispersion under "least stable" wind conditions in rural areas and areas of complex terrain is not a rational decision and is arbitrary and capricious.
 
 
 18
 As we read EPA's position on this point, it is that no better solution has been proposed. This answer, however, ignores the Enviroplan and Smith-Singer studies. More importantly, it ignores the conclusions of the experts' conference convened by Argonne National Laboratory at United States EPA's own request. The report of that conference suggested "elimination of the A curve and the use of the B curve for both A and B stability categories." See Report of the Specialists' Conference on the EPA Modeling Guideline, Feb. 22-24, 1977, Chicago, Illinois, at Sec. 2.7.5: "Vertical Dispersion Estimates."
 
 
 19
 By pointing out this proposed solution, we do not mandate its acceptance by United States EPA. Our ultimate action on this score is simply to remand this issue to United States EPA for further study. This might result in the writing of a new record which supplies the now missing support for the use of Class A coefficients for the least stable wind condition in rural counties, or it might result in United States EPA's adoption of use of the Class B coefficients for the two least stable wind conditions, or it might result in a new record which supports a wholly new solution.
 
 
 20
 578 F.2d at 663-64.
 
 
 21
 Thus the sole issue of practical significance before this court at this time is the question as to whether or not the EPA, since the remand, has properly carried out this court's mandate to undertake further study of the basis for the use of Class A coefficients and whether, if so, the record now supports EPA's renewed determination that the Class A coefficients should continue to be used for power plants in rural areas.
 
 
 22
 We now have this case back before us with many newly stated arguments from EPA's opponents[2] and some from Intervenor State of Pennsylvania.
 
 
 23
 After a lengthy hearing (which included the State of Pennsylvania's contentions), the court concludes that we carefully limited the remand to a single issue and that we should now decide only that issue. This record shows that EPA did reconsider and did introduce into the record additional support for its original finding that the Pasquill-Gifford Class A coefficients should be used and we now affirm.
 
 
 24
 Since the beginning, this case has been the subject of careful study by this court because of 1) the complexity and technicality of the record; 2) the economic importance of the decision to the industry concerned; and 3) the health hazards to the general public. Yet our review is limited by a very narrow standard. Congress has provided:
 
 
 25
 (9) In the case of review of any action of the Administrator to which this subsection applies, the court may reverse any such action found to be--
 
 
 26
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 27
 42 U.S.C. Sec. 7607(d)(9)(A) (Supp. I 1977).
 
 
 28
 The Supreme Court has elaborated upon this standard:
 
 
 29
 Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, supra, [401 U.S. 402 at 416, 91 S.Ct. 814 at 823, 28 L.Ed.2d 136]. The agency must articulate a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168 [83 S.Ct. 239, 246, 9 L.Ed.2d 207] (1962). While we may not supply a reasoned basis for the agency's action that the agency itself has not given, SEC v. Chenery Corp., 332 U.S. 194, 196 [67 S.Ct. 1575, 1577, 91 L.Ed. 1995] (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 595 [65 S.Ct. 829, 836, 89 L.Ed. 1206] (1945).
 
 
 30
 Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-86 [95 S.Ct. 438, 441-42, 42 L.Ed.2d 447] (1974).
 
 
 31
 Undertaking the review called for concerning the issue in this case, we find that the agency took the following actions:
 
 
 32
 1) At a meeting of EPA Region V staff representatives on August 15, 1978, this court's remand of the Pasquill-Gifford dispersion coefficients was considered. EPA thereafter decided to continue to use the Class A coefficients "until an alternative approach is sufficiently demonstrated to be more adequate."
 
 
 33
 2) February 7, 1979, EPA published a Notice of Reconsideration in 44 Fed.Reg. 7,798 (1979), concerning 1) the use of Class A coefficients at the four power plants then concerned; and 2) extending the time necessary for compliance with emission limitations.
 
 
 34
 3) EPA also considered and rejected the solution proposed by appellants, namely, the use of Class B dispersion coefficients "as contrary to both dispersion theory and available data." It based the rejection in part upon data taken from studies at the Karlsruhe Nuclear Research Center in Germany. These studies, EPA found, supported use of the Class A coefficients.
 
 
 35
 4) A period followed when EPA received and considered objections filed by the appellants claiming 1) inapplicability of the Karlsruhe data and EPA's misinterpretation of it; 2) EPA's failure to consider all alternatives; and 3) its failure to take into proper account "The enormous economic costs involved."
 
 
 36
 5) On June 19, 1980, EPA announced and published its intention to continue to employ the Pasquill-Gifford Class A coefficients (See 45 Fed.Reg. 41,501 (1980)). It subsequently denied appellants' motions to reconsider.
 
 
 37
 This court, of course, has no responsibility for determining the merits (or lack thereof) of the technical standard EPA has adopted. Our duty ends when we are able to say that the agency has acted lawfully and that the decision is not "arbitrary, capricious or an abuse of discretion." We find no violation of this standard on review of this record. The instant petitions for review are dismissed.
 
 
 
 [1]
 (1) Stuart (Dayton Power & Light)--now in compliance, but remaining in litigation;
 (2) Cardinal (Ohio Power Co.)--limits not contested, but if P-G Class A coefficients are again vacated, the limits are once again in question; and
 (3) Muskingum River (Ohio Power Co.)--only plant in which emission limitations are still contested.
 One petition involved in the original appeal (that of Columbus & Southern Ohio Electric Company's Conesville plant) has been voluntarily dismissed.
 
 
 [2]
 Petitioners also contend that EPA was required on this remand to follow the formal notice requirements of Sec. 307(d) of the Clean Air Act, 42 U.S.C. Sec. 7607(d). We agree with EPA, however, that the reconsideration ordered by this court did not constitute either promulgation or revision of an implementation plan. Additionally, if we were to assume the applicability of Sec. 307(d) to this proceeding, any deviation from the Sec. 307(d) requirements under the record contained here would be harmless within the meaning of 42 U.S.C. Sec. 7607(d)(9)